WARREN CROOK, PLAINTIFF, v. TOWNSHIP OF CLARK IN THE COUNTY OF UNION, WILLIAM MAGUIRE, AS MAYOR OF THE TOWNSHIP OF CLARK, VICTOR CORDONE, JOHN FARMAR, JOHN HAGGERTY, HARRY XIFO, HAROLD HARRIS, JOHN CONNOR AS MEMBERS OF THE TOWNSHIP COUNCIL OF THE TOWNSHIP OF CLARK, AND THE TOWNSHIP COUNCIL OF THE TOWNSHIP OF CLARK, EDWARD R. PADUSNIAK, AS TOWNSHIP CLERK OF THE TOWNSHIP OF CLARK AND JOSEPH SMITH, INDIVIDUALLY, AND AS DIRECTOR OF PUBLIC WORKS AND ENGINEERING OF THE TOWNSHIP OF CLARK, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided April 30, 1962.

*Mr. John B. Stone, Jr.,* argued the cause for the plaintiff (*Messrs. Ryan, Saros, Davis & Stone,* attorneys).

*Mr. Irvine B. Johnstone, Jr.,* argued the cause for the defendant Township of Clark (*Messrs. Dughi & Johnstone,* attorneys).

*Mr. Charles Rubenstein* argued the cause for the defendant Joseph J. Smith (*Messrs. Rubenstein & Glick,* attorneys).

FELLER, J. S. C.   This is an action in lieu of prerogative writs.   Plaintiff demands judgment that the special meeting of the township council of the Township of Clark on August 22, 1961 be declared illegal and void; that the resolution adopted at that meeting rejecting the dismissal of defendant Joseph J. Smith by the mayor be declared illegal and void, and that the part of the resolution rejecting all charges made by the mayor against defendant Smith be vacated.

Defendants move to dismiss the complaint on the grounds that the action was not brought within the time limited by *R. R.* 4:88–15, and further, that the complaint failed to state a claim upon which relief can be granted pursuant to *R. R.* 4:12–2.   After hearing oral argument on the motion this court decided that in the interest of justice the suit should not be dismissed; that there was sufficient basis for the commencement of the suit three days beyond the time limit.   See *R. R.* 4:88–15(a).   This court at that time also determined that under the provisions of the statutes and the ordinance of Clark Township, the members

of council were entitled to service of a written notice of the special meeting of August 22, 1961, which notice should have included the purpose for which this special meeting was called. See *N. J. S. A.* 40:69A–179, 40:69A–43(c), 40:69A–180(b); *R. S.* 40:49–1; section 3 of ordinance No. 61–2 of Clark Township; *Bohan v. Township of Wee-hawken,* 65 *N. J. L.* 490 (*Sup. Ct.* 1900); *Hicks v. Long Branch Commission,* 69 *N. J. L.* 300 (*E. & A.* 1903).

This court reserved decision as to whether the actual attendance and participation of the plaintiff and the other members of council, except one, at this special meeting of August 22, 1961 constituted a waiver of the requirement of written notice. This was considered as a motion for summary judgment in accordance with *R. R.* 4:12–3. Affidavits were filed and testimony taken in court in lieu of depositions.

It was conceded that no written notice of the special meeting of August 22, 1961 was served on the members of council. The minutes reveal that the meeting was called to order at 10:40 P. M.; that Councilman Connor was the only one absent; that the other six councilmen were present, including plaintiff; that plaintiff questioned the legality of the meeting and protested against the same; that the resolution rejecting all charges brought against Joseph J. Smith, Director of Public Works and Engineering, by the mayor was adopted by a vote of 6–1, and that the plaintiff was the only one who voted against the same.

The affidavits and testimony revealed that plaintiff, Councilman Warren Crook, was in the municipal building on the night of August 22, 1961 attending a caucus meeting; that at 10:39 P. M. defendant Edward R. Padusniak, the township clerk, entered the conference room and told defendant Harold Harris, president of the township council, that he had one minute to make the meeting which was a special meeting. Plaintiff stated that this was the first indication he had of this meeting; that he attended the special meeting but was not aware of the business to be

transacted until the resolution in question was read; that he then challenged the legality of the meeting, and that no other business was discussed at this particular meeting, which lasted only a short time. Plaintiff further stated that he was not prepared to intelligently discuss the subject matter of the meeting; that the attorney was not present to consult with; that he did not intend to waive his rights although he knew that the council had until midnight of August 22, 1961 to act on the resolution. He further said that he was aware of the "Joe Smith incident"; that he attended the entire hearing before the mayor and was familiar with the entire case; that the matter was discussed at a caucus prior to August 22; that he knew that the resolution was passed reinstating Smith and that he voted "no"; that no one forced him to go to the meeting; that no one forced him to remain and cast his vote, and that he was not given the time or opportunity to persuade other councilmen.

The evidence also revealed that Padusniak, the township clerk, was in the municipal building on August 22, 1961 to continue a previous caucus meeting, and that at 10:35 P. M. he delivered a letter to Harris, president of township council, requesting the special meeting, which was signed by a majority of council members, and that plaintiff was present when the letter was delivered and that those who were in the conference room went into the council chamber for the meeting; that President Harris announced that a special meeting was to be called on Joe Smith; that plaintiff, who was on the dais, objected to the meeting after the "Smith" resolution was read; that plaintiff did not sign the letter requesting a special meeting, but went into the council chamber with the others. Councilman Cordone testified that he requested a hearing on Joseph Smith at several previous meetings but was informed that a transcript of the hearings before the mayor was not available; that he knew that the matter had to be resolved within 20 days and had brought up the matter at the meeting of August 16,

and that all the members of council were aware that the matter had to be decided that night.

According to the affidavits, at the conclusion of the hearing involving Joseph Smith before Mayor Maguire, the mayor made conclusions in writing dated August 1, 1961 with respect to the aforementioned hearing and therein stated the following:

"In conclusion therefore, I have conducted a hearing on Mr. Smith's action and I have found him guilty on the first two counts as charged. As I stated previously in this letter, I am filing notice with the Council that Mr. Smith will be discharged as head of the Department of Public Works and Engineering on August 22, 1961 pursuant to R. S. 40:69A–43(c)."

At the said meeting of council on August 22, 1961 the following resolution was introduced by Councilman Haggerty, seconded by Councilman Farmar, and adopted by a vote of 5–1 (Councilmen Cordone, Farmar, Haggerty, Xifo and Harris voted "aye," and Councilman Crook voted "nay"):

"BE IT RESOLVED by the governing body of the Township of Clark that the dismissal of Joseph Smith, Director of Public Works is hereby rejected by this Council and Be it further resolved

That all charges brought against Mr. Smith by the Mayor of the Township of Clark have been reviewed by this Council and rejected in its entirety."

Apparently, the above proceedings were taken in pursuance of *N. J. S. A.* 40:69A–43(c) which provides as follows:

"The mayor may in his discretion remove any department head after notice and opportunity to be heard. Prior to removing a department head the mayor shall first file written notice of his intention with the council and such removal shall become effective on the twentieth day after the filing of such notice unless the council shall prior thereto have adopted a resolution by a 2/3 vote of the whole number of the council disapproving the removal."

As a result of the action of council on August 22, 1961, Mayor Maguire on August 28, 1961 restored defendant

Smith to his office and delivered to him the keys and other data pertaining to his office. Thereafter defendant Smith was compensated for the full period of his suspension and has been treated by the mayor as the Director of the Department of Public Works and Engineering and has been performing his duties as such.

The question to be decided is: Did plaintiff and the other councilmen present waive their right to the service of notice of the special meeting held on August 22, 1961 by attending this meeting and participating in the business of the meeting? The evidence reveals that although plaintiff protested against the holding of the meeting, he attended the meeting with the others and voted against the reinstatement of defendant Smith.

■ Although there do not appear to be any New Jersey cases applicable, it has been held in other states that in the absence of a statute providing otherwise, where all members of a council are in attendance at a special meeting and participate therein, the absence of a call for such meeting will not render invalid the meeting or action taken thereat where the meeting is otherwise regular and the business transacted is not of a nature entitling the public to notice thereof. Under these circumstances, call and notice are considered to have been waived. 62 *C. J. S. Municipal Corporations* § 397(d), *p.* 756; see *Nelson v. City of South Omaha,* 84 *Neb.* 434, 121 *N. W.* 453 (1909); *Magneau v. City of Fremont,* 30 *Neb.* 843, 47 *N. W.* 280, 9 *L. R. A.* 786 (1890). Every member of a municipal council is entitled to reasonable notice of special meetings, and no important action may lawfully be taken unless such notice has been given or unless the members not notified attend and participate in the business of the meeting. *Knoxville, City of v. Knoxville Water Co.,* 107 *Tenn.* 647, 64 *S. W.* 1075, 1077, 61 *L. R. A.* 888 (1901); 37 *Am. Jur.,* § 56, *pp.* 670, 671.

■ In *Tandy & Fairleigh Tobacco Co. v. City of Hopkinsville,* 174 *Ky.* 189, 192 *S. W.* 46, 50 (1917), the

court said that the purpose of a notice being to inform the members that a meeting would be held and to procure their attendance, the necessity of the notice was dispensed with by the presence of all the members. And in 20 *Am. & Eng. Encycl. of Law, p.* 1211, the rule is stated that as to special meetings called, personal notice must be given to each member in a manner usually provided by the municipal charter, and such notice should specify the business to be transacted. But though there be no proper notice at the time of the meeting, if each member attends and acts in reference to the matter clearly within the scope of their corporate powers, then such meeting will be valid in the absence of a charter provision expressly or impliedly to the contrary. So also the presence of any member at a special meeting cures the irregularity of a failure of notice to him. See also *Moore v. City Council of Perry,* 119 *Iowa* 423, 93 *N. W.* 510, 512 (1903) ; *Carpenter v. City of Paragould,* 198 *Ark.* 454, 128 *S. W. 2d* 980 (1939) ; *Lawrence v. Traner,* 186 *Ill.* 474, 27 *N. E.* 197 (1891) ; *Gelinas v. Fugere,* 55 *R. I.* 225, 180 *A.* 346 (1935) ; *London & N. Y. Land Co. v. Jellico,* 103 *Tenn.* 320, 52 *S. W.* 995 (1899) ; *Southwestern Gas & Electric Co. v. City of Hatfield,* 219 *Ark* 515, 243 *S. W. 2d* 378 (1951) ; *Solomon v. Calvert City,* 267 *S. W. 2d* 719 (1954) ; *Bluff City, City of v. Western Light & Power Corp.,* 137 *Kan.* 169, 19 *P. 2d* 478 (1933).

Furthermore, in 37 *Am. Jur.,* § 56, *p.* 670, the same rule is stated as follows:

"Where however all the members of the council meet and act as a body, it has been held that they may at such meeting or at any adjourned session thereof transact any business within the powers conferred by law notwithstanding no written call for the meeting was made as required by law, or in case one was made which failed to specify the purpose of the meeting."

Thus, it is evident from the above that all members must be present and participate at a special meeting called with-

out notice to constitute a waiver of such notice. In the present case the business transacted was not of a nature entitling the public to notice thereof since the council acted by resolution—not by ordinance—in accordance with the provisions of *N. J. S. A.* 40 :69A–43(c) and all were present and participated at the special meeting except Councilman J. H. Connor, who in his affidavit stated that he was not present at the meeting of August 22, 1961 because he had commenced his vacation on August 8, 1961 and did not return until August 25, 1961; that his vacation consisted in taking an extended automobile trip throughout the western states of the United States and it would have been impossible to reach him during the period of his vacation, and no notice of any meeting called could have been given to him. In his affidavit he also said as follows:

"I also wish to state that had I been present at the meeting of August 22, 1961 at which the Council overrode the Mayor's dismissal of Mr. Smith, I would have voted to override the Mayor's action and would have voted with the five members who so voted."

Where it is impractical to give notice of a special meeting to a member because of his absence from the municipality or a state, notice to him is dispensed with. *State ex rel. Harty v. Kirk,* 46 *Conn.* 395 (*Sup. Ct. Err.* 1878); *Gale v. Moscow,* 15 *Idaho* 332, 97 *P.* 828 (1908); *Knoxville, City of v. Knoxville Water Co., supra,* and failure to give notice does not vitiate proceedings taken at a meeting in his absence. *State ex rel. Harty v. Kirk, supra;* and especially is this so where if notified the member could not have reached the place of meeting in time for the meeting, *Gale v. Moscow, supra,* or where the member knew the meeting was to be held and approved what was to be done at the meeting. *Rafferty v. Town Council of Clermont,* 180 *Iowa* 1391, 164 *N. W.* 199 (1917). It was impossible to give notice of the special meeting to Councilman Connor because of his absence from the State, and thus notice to him was dispensed with and his absence from the meeting

does not vitiate the proceedings taken in his absence. If he had been notified, he could not have reached the place of the meeting in time for the meeting, and if present would have approved what was done at the meeting. So the fact that Councilman Connor was the only one absent at the meeting does not make the meeting illegal and void.

Plaintiff knew or should have known the purpose of the meeting. He knew that council had until midnight of August 22, 1961 to act on the reinstatement of defendant Smith. In fact, the mayor's written conclusions stated that Smith would be discharged on August 22, 1961. Plaintiff was fully aware of the "Joe Smith incident," had attended the entire hearing before the mayor, and was familiar with the entire case. He knew that the matter was discussed in caucus prior to August 22, 1961. He was in the municipal building on another matter and attended the meeting voluntarily in the council chamber, and although he questioned the legality of the meeting, he understood the resolution of reinstatement and participated in the meeting by voting against the reinstatement of Smith. Thus, it is the opinion of this court that the plaintiff by his actions waived the notice of special meeting.

Although some jurisdictions hold to the contrary, see 4 *McQuillin, Municipal Corporations* (3d ed.), sec. 13.37, pp. 509, 510; *Willian v. City of Evansville,* 121 *Ind. App.* 185, 98 *N. E.* 2d 219 (1951); *Baumgardner v. City of Hawthorne,* 104 *Cal. App.* 2d 512, 231 *P.* 2d 864 (1951), it seems inconsistent and incongruous to permit a resolution to be voted by all the members at a special meeting and then after the adoption of the resolution allow a disgruntled minority to defeat the resolution by claiming lack of notice of the meeting in which they participated. The voluntary attendance at the meeting and actual participation in the business of the meeting should constitute the waiver of notice. See *Tombaugh v. Grogg,* 146 *Ind.* 99, 44 *N. E.* 994, 996 (1896), in which the court stated:

"Besides if the notice to the board to meet in special session and try an election case has not been served but the members appear at the time and place fixed to try the same, *thus waiving the service of the notice,* neither the contestor nor the contestee can object to such want of service." (Emphasis supplied)

In *Burns v. Stenholm,* 310 *Mich.* 639, 17 *N. W. 2d* 781 (1945), the court held that where notice of special meeting of city commissioners stated that it was for purpose of submitting a proposed ordinance to the electors, but contained no provisions relative to appointment to fill vacancies in the commission, and only three of the five members were present, one of whom objected to the consideration of appointments, resolutions concerning appointments to fill vacancies were void. However, the facts differ from the facts in the case at bar. In *Burns,* two of the five members were absent and their absence was not accounted for, and one of the three members present, who objected, did not vote. At the meeting on August 22, 1961 all councilmen were present except one, and his absence was explained and accounted for, and plaintiff who objected did vote on the resolution. Therefore, by his voluntary presence and participation in the business of the meeting he waived his right to notice of this special meeting. See *Scales v. Butler,* 323 *S. W. 2d* 25, 28, 29 (*Mo. App.* 1959).

There is no genuine issue as to a material fact presented in the affidavits or testimony. Accordingly, summary judgment is entered in behalf of the defendants.