RENDERED:  MARCH 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0117-MR

CLEANING BY REGINA &
ASSOCIATES, LLC                                                    APPELLANT


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE THOMAS D. WINGATE, JUDGE
                        ACTION NO. 23-CI-00535


FINANCE AND ADMINISTRATION
CABINET, COMMONWEALTH OF
KENTUCKY                                                           APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, L. JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  Cleaning by Regina & Associates, LLC ("Cleaning by

Regina") appeals from a Franklin Circuit Court judgment upholding the denial of

three bid protests by the Finance and Administration Cabinet ("Finance Cabinet").

We affirm.

This appeal involves application of the Kentucky Model Procurement Code, set forth at KRS[1] 45A.005 *et seq.* Specifically, this appeal challenges awards for state contracts subject to the competitive sealed bidding process described in KRS 45A.080. KRS 45A.080(5) states: "The contract shall be awarded by written notice to the responsive and responsible bidder whose bid offers the best value."

KRS 45A.070, which defines terms used in KRS 45A.080, provides in pertinent part:

> As used in KRS 45A.070 to 45A.180, unless the context in which they are used clearly requires a different meaning:
>
> (1) "Best value" means a procurement in which the decision is based on the primary objective of meeting the specific business requirements and best interests of the Commonwealth. These decisions shall be based on objective and quantifiable criteria that shall include price and the reciprocal preference for a resident bidder required under KRS 45A.494 that have been communicated to the offerors as set forth in the invitation for bids.
>
> . . .
>
> (6) "Responsible bidder or offeror" means a person who has the capability in all respects to perform fully the contract requirements, and the integrity and reliability which will assure good faith performance.

_____

[1] Kentucky Revised Statutes.

(7) "Responsive bidder" means a person who has submitted a bid under KRS 45A.080 which conforms in all material respects to the invitation for bids, so that all bidders may stand on equal footing with respect to the method and timeliness of submission and as to the substance of any resulting contract.

With this background in mind, we consider the undisputed facts of this case.

## FACTS

Finance Cabinet is the central procurement and contracting agency for the Commonwealth of Kentucky. KRS 45A.045(1). As such, it posts Requests for Bids for services needed for various state agencies.

Cleaning by Regina has performed janitorial services for several state agencies. It received a few negative performance reviews from state agencies between 2017 and mid-2019.

In 2019 and 2020, Cleaning by Regina responded to several bid requests posted by Finance Cabinet. Three of its bids were declined, leading Cleaning by Regina to file three protests. *See* KRS 45A.285.

The bids were scored based 90 percent on price and 10 percent on years of experience. Despite a few past negative performance reviews, Cleaning by Regina had the highest score for all three bid requests based on price and years of experience.

All three bid requests included a provision stating: "Past Vendor Performance may be considered in the award of this Contract. Vendors with a

record of poor performance in the last twelve (12) months may be found non-responsible and ineligible for award." The explanations for the three denials all noted the Finance Cabinet deemed Cleaning by Regina a non-responsible bidder due to past negative performance reviews. Thus, despite Cleaning by Regina being the highest evaluated bidder for each of these three bid requests, it was considered ineligible for the awards and the three contracts were awarded to other bidders.

Though Cleaning by Regina was not awarded those three contracts due to negative performance reviews in the preceding twelve months, it was awarded two other contracts in the same time frame because the requesting agencies agreed to waive past performance issues. In one instance, no other vendors had responded to the bid request.

Meanwhile, Cleaning by Regina filed protests to the three contract awards to other bidders with the Finance Cabinet Secretary. The Secretary denied its protests and upheld the three awards to other bidders.

Cleaning by Regina petitioned the Franklin Circuit Court for review of the Secretary's decision. Both Cleaning by Regina and Finance Cabinet filed motions for summary judgment, noting the facts were undisputed.

The Franklin Circuit Court granted summary judgment in favor of Finance Cabinet. The court noted Cleaning by Regina argued that it was denied due process, and that Finance Cabinet acted arbitrarily.

The court recognized that Cleaning by Regina was deemed a non-responsible bidder for these three contracts based on past negative performance reviews. However, it also took note that Cleaning by Regina's bids had been scored the highest.

The court rejected Cleaning by Regina's allegations of being denied due process and being subjected to arbitrary or capricious action. It found that the Cabinet acted rationally in putting vendors on notice that past performance may be considered and that vendors with negative performance reviews in the last twelve months may be deemed non-responsible bidders. It also found: "The Cabinet permitted the state agency set to receive the janitorial services the option to recommended [sic] waiver of the rule, and when such recommendation was made, the Cabinet abided by the agency's request." (Page 4 of Franklin Circuit Court Order attached to Appellant red brief; Record on Appeal, ("R"), p. 283). So, it found the inclusion of the past performance provision in the bid requests was not arbitrary, capricious, or contrary to the Kentucky Model Procurement Code.

The court also disagreed with the assertions of denial of due process. It noted Cleaning by Regina's argument that Finance Cabinet failed to provide a way to challenge negative performance evaluations or the reliance on these

evaluations. However, the court took note that Finance Cabinet's policy manual[2] set forth a process whereby vendors would receive written notice of complaints and an opportunity to respond—either by seeking informal resolution with Finance Cabinet or the requesting agency or by filing an appeal with the Secretary. The court found that Cleaning by Regina did not challenge the evaluations or seek review of the evaluations from the Secretary.

The court also determined that Cleaning by Regina received due process through the protest determination process set forth in KRS 45A.285—both through the Secretary's review of the three bid protests and the court's review.

Cleaning by Regina filed a timely appeal.

## ANALYSIS

### Standard of Appellate Review

As the appeal is from a summary judgment granted based on the application of law to undisputed facts, we apply the non-deferential *de novo* standard of review. *Motorists Mutual Insurance Company v. First Specialty Insurance Corp.*, 706 S.W.3d 120, 124 (Ky. 2024) (citing *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016) ("When a motion for summary judgment at the trial

---

[2] As the Franklin Circuit Court noted, Finance Cabinet's policy manual is incorporated by reference in 200 Kentucky Administrative Regulations (KAR) 5:021. Moreover, Finance Cabinet's policies may also be found on its website, https://finance.ky.gov (last visited Dec. 15, 2025).

-6-

court, and on appeal, presents only a question of law, we review *de novo* and give no deference to the lower courts."")).

Despite the non-deferential standard of review, we discern no reversible error in the Franklin Circuit Court's affirming the Secretary's decision.

In reviewing the contracts awarded pursuant to the Kentucky Model Procurement Code, the circuit court was faced with determining whether Finance Cabinet acted arbitrarily, capriciously, or contrary to law. *Laboratory Corp. of America Holdings v. Rudolph*, 184 S.W.3d 68, 73 (Ky. App. 2005).

The circuit court determined that no such arbitrary, capricious, or unlawful action occurred considering the undisputed facts here. We agree with this determination despite the constitutional arguments raised on appeal.

Cleaning by Regina contends that Finance Cabinet's past performance disqualification rule is unconstitutional if applied in an arbitrary and capricious manner—such as to deny due process. Moreover, it argues this rule is arbitrary and capricious, as applied, because, in its view, this is a subjective rule with no clear standards which is subject to the whims of individuals who apply it inconsistently.

However, despite these arguments, we conclude the circuit court did not err in determining that Cleaning by Regina was not deprived of due process

and that Finance Cabinet did not act in an arbitrary and capricious manner based on the undisputed facts here.

**The Circuit Court Did Not Err in Determining that Cleaning by Regina Was Not Denied Due Process**

Cleaning by Regina argues that Finance Cabinet acted arbitrarily by denying it due process. Although it does not suggest that a full-blown evidentiary hearing was required in the procurement process, it argues Finance Cabinet offers no standard or guidance but simply has unfettered discretion whether to disqualify a vendor upon evidence of prior poor performance. Cleaning by Regina asserts that all it could do was to submit bids, which it did. It notes it was the highest-evaluated bidder. It contends: "Only then [after submitting a bid] . . . did it learn that [Finance Cabinet] disqualified it for perceived prior poor performance." (Appellant red brief, page 14).

As Finance Cabinet and the circuit court pointed out, however, Cleaning by Regina had an opportunity to challenge the poor performance reviews at the time they were issued but elected not to do so. Moreover, the bid requests provided notice that past performance could be considered and that negative performance reviews in the preceding twelve months could lead to a determination of ineligibility. Also, Cleaning by Regina was provided hearings to challenge the denial of its bids before the Secretary and the circuit court. Therefore, we agree with the circuit court that Cleaning by Regina was not deprived of due process.

-8-

*See TECO Mechanical Contractor, Inc. v. Commonwealth*, 366 S.W.3d 386, 393

(Ky. 2012):

> Procedural due process requires that some kind of hearing be conducted before the State finally deprives a person of his liberty or property. The requirements of procedural due process are not intended to prevent the State from depriving individuals of their liberty or property; instead, they are intended to minimize substantively unfair or mistaken deprivations of life, liberty, or property by enabling persons to contest the basis upon which a State proposes to deprive them of protected interests.

(Internal quotation marks and citations omitted.) As Cleaning by Regina was not deprived of any property interest without notice or a hearing allowing it to contest the award of the three contracts to others, we reject its assertion that it was denied due process.

Next, we address Cleaning by Regina's argument regarding the alleged lack of objective standards for determining whether contracts are awarded to otherwise qualified vendors with past negative performance evaluations.

### Purchasing Agents' Having Discretion to Waive Past Performance Disqualification Rule Did Not Result in Arbitrary, Capricious, or Unlawful Action

Cleaning by Regina complains there is a lack of objective standards for considering bids from vendors with prior negative performance evaluations, which amounts to arbitrary, capricious, or unlawful action. It concedes that vendors may contest negative performance evaluations. But it argues procurement

agents have "unfettered discretion" whether to award contracts to vendors with prior negative performance evaluations and can simply do what they want without any "guardrails" or "constraints." (Reply brief, pages 3-4). Moreover, Cleaning by Regina contends that this allegedly "standardless rule is unconstitutionally arbitrary." (Appellant red brief, page 15) (citing *South Central Bell Telephone Co. v. Utility Regulatory Comm'n*, 637 S.W.2d 649 (Ky. 1982)).

In *South Central Bell*, our Supreme Court reversed the Court of Appeals and reinstated the circuit court's injunction prohibiting the Utility Regulatory Commission from imposing a penalty reducing a utility's reasonable rate of return for alleged prior poor performance. *Id*. at 651-52. The Court discussed specific provisions in KRS Chapter 278 and the remedies afforded by statute for determining rates and addressing service problems. *Id.* at 652-53. Noting "the General Assembly omitted a specific provision allowing the Commission to enforce its service cases by a reduction in a rate case[,]" *id.* at 653, our Supreme Court held it was improper to reduce rates due to prior bad service:

> It seems to us that there is an inherent danger in permitting poor service as a basis for setting rates, particularly in the imposition of a penalty which results in a reduction of a rate which the Commission has already found to be fair and reasonable. There are no objective, definable standards upon which to base a penalty. It is, at best, arbitrary and subjective. Punitive actions should not be subject to the possible whims of individuals, including those serving on a responsible administrative body. In the present case, it appears that

the Commission was upset or frustrated by what it deemed Bell's failure to improve its service in a previous case. Such a reaction may be justified but it is difficult to reconcile Bell's possible failure with the imposition of a penalty that would cost the company tens of millions of dollars over the years. This case is a classic example of arbitrary and subjective judgment.

*Id*. at 653.

Employing similar language to that quoted above, Cleaning by Regina argues Finance Cabinet acted arbitrarily by allowing individual procurement agents to waive or not waive consideration of prior performance issues on whims and without objective, definable standards.

Without expressly distinguishing *South Central Bell*, 637 S.W.2d 649, Finance Cabinet responds by asserting that purchasing officers have broad discretion to draft bid requests and to determine whether bidders are responsible. It also argues purchasing officers' decisions are entitled to a presumption of correctness, citing KRS 45A.280, which provides:

> The decision of any official, board, agent, or other person appointed by the Commonwealth concerning any controversy arising under, or in connection with, the solicitation or award of a contract, shall be entitled to a presumption of correctness and shall not be disturbed unless the decision was procured by fraud or the findings of fact by such official, board, agent or other person do not support the decision.

Finance Cabinet also points out, the bid requests at issue expressly recognized that purchasing agents have discretion to consider past performance

issues. The bid request documents state that prior negative performances "may" be considered and that negative performance reviews in the past twelve months "may" result in the vendor being considered non-responsible (and thus ineligible).

Moreover, Finance Cabinet asserts that the primary aim of the Kentucky Model Procurement Code is to benefit the public[3] and that purchasing agents' having discretion whether to waive past performance issues benefits the public. It points out that Finance Cabinet often has "little or no direct knowledge of a vendor's performance on any particular janitorial contract." (Appellee brief, page 10). So, it asserts it must often rely on information provided by agencies using janitorial services in performance reviews, which may be challenged by vendors according to Finance Cabinet policy.

Finance Cabinet also argues that, despite any suggestion that an entirely mandatory rule about considering past performance might be clearer or fairer, the public benefits from the purchasing agent having discretion to consider other factors (including price, requesting agencies' needs, and any lack of other bids) when determining whether to consider vendors with recent negative performance reviews eligible for contract awards.

---

[3] *RAM Engineering & Constr., Inc. v. University of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003); *Ohio River Conversions, Inc. v. City of Owensboro*, 663 S.W.2d 759, 760 (Ky. App. 1984).

While the Kentucky Model Procurement Code aims for treating vendors equitably as well as benefitting the general public, *see* KRS 45A.010(2), we discern nothing unlawful or inequitable in a vendor's possibly being considered non-responsible based on negative performance reviews within the past year. This is especially true since vendors have an opportunity to contest negative evaluations, and the bid requests provided notice that past performance could be considered and that negative performance reviews in the past year could result in a finding of non-responsibility.

Nothing in the Kentucky Model Procurement Code forbids consideration of past performance reviews in making contract award determinations—in contrast to the public utility context in *South Central Bell*, in which our Supreme Court determined that "the question of rates should be kept separate from the question of service" based on KRS Chapter 278 requirements. 637 S.W.2d at 654. More specifically, nothing in KRS Chapter 45A prohibits consideration of past performance reviews in determining whether a vendor is responsible or offers the best value.

While there is no precise mathematical formula for determining whether a vendor with past negative performance reviews should be considered responsible, governing statutes in this context require only that the contract be awarded to "the responsive and responsible bidder whose bid offers the best

value." KRS 45A.080(5). Cleaning by Regina cites to no authority specifically forbidding consideration of past performance in determining whether a bidder is responsible or offers the best value. Nor does it cite authority specifically forbidding purchasing agents from having discretion whether to waive the past performance disqualification rule. While perhaps some vendors may disapprove of purchasing agents' having discretion whether to waive the performance disqualification rule, this is a significantly different context than the utility rate determinations at issue in *South Central Bell*, 637 S.W.2d 649.

Moreover, in determining which service provider to award a contract, we cannot say it is totally irrational to allow the requesting agency an option to waive application of the performance disqualification rule to best achieve its needs. This is especially true in situations where there are no other bidders or where a bidder's other qualifications (such as offering the lowest price or the most experience) clearly outweigh the significance of one or more recent negative performance reviews.

Also, purchasing agents have a statutory duty to act in good faith, KRS 45A.015(2), and are presumed to be honest, to act with integrity, and to do their best to perform their duties in accordance with the law. *Pendleton Bros. Vending, Inc. v. Commonwealth Finance and Admin. Cabinet*, 758 S.W.2d 24, 30 (Ky. 1988). Thus, purchasing agents do not have unfettered discretion to act on a

whim and their decisions are presumed correct and should not be set aside unless the decision resulted from fraud or findings of fact are not supported by the evidence. *Id*. (quoting KRS 45A.280).

Based on the undisputed facts of this case and the lack of allegations of fraud, we discern no reason for the circuit court to set aside the procurement decisions at issue here.

"As a general rule the yardstick of fairness is sufficiently broad to measure the validity of administrative action." *Boone Development, LLC v. Nicholasville Board of Adjustment*, 709 S.W.3d 88, 94 (Ky. 2024) (quoting *American Beauty Homes Corp. v. Louisville and Jefferson Cnty. Planning and Zoning Commission*, 379 S.W.2d 450, 457 (Ky. 1964)).

Choosing whether to disqualify a bidder due to recent poor performance reviews is inherently fact-specific, and the fact that a decisionmaker had discretion in choosing whether to waive such recent performance issues does not vest the decisionmaker with arbitrary power, given the statutory requirement that purchasing agents must act in good faith. We cannot say it is patently unfair to consider a bidder's past performance reviews when awarding contracts involving the expenditure of taxpayer funds.

Moreover, Cleaning by Regina had the ability to ask for an administrative review of both the negative performance reviews, which it waived,

and of the purchasing agent's refusal to waive such past performance issues. This provides due process and eliminates the possibility of unfairness by purchasing agents which is so pervasive as to be truly arbitrary. In sum, we conclude the circuit court did not err in determining that the Finance Cabinet acted in a rational manner and did not engage in arbitrary, capricious, or unlawful action.

Further arguments raised in the briefs which have not been discussed in this Opinion have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Stephen B. Pence
Louisville, Kentucky

BRIEF FOR APPELLEE:

Patrick W. McGee
Office of General Counsel
Commonwealth of Kentucky
Finance and Administrative Cabinet
Frankfort, Kentucky